**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2024 APR 23  PM 2:28

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No.

(To be supplied by the court)

DWAYNE K. WILSON

_____, Plaintiff

v.

WESTERN PACIFIC BUILDING MATERIALS
,

GREG KILCOLLINS                                        ,

KATIE CLEMENS                              ,                              ,

JEREMY SALAZAR                            ,

_____,

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

**EMPLOYMENT DISCRIMINATION COMPLAINT**

---

1

> **NOTICE**
>
> Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.
>
> **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

**Dwayne K. Wilson, 11000 E. Idaho Pl., Aurora, CO. 80012**
(Name and complete mailing address)

(720) 226-1109 dkw070971@gmail.com
(Telephone number and e-mail address)

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Western Pacific Building Materials, 320 S. Lipan St., Denver, CO. 80223

        (Name and complete mailing address)

        (303) 454-8811 http://gowestpac.com
        (Telephone number and e-mail address if known)

Defendant 2:    Greg Kilcollins, 320 S. Lipan St., Denver, CO. 80223
        (Name and complete mailing address)

        (303) 454-8811 http://gowestpac.com
        (Telephone number and e-mail address if known)

Defendant 3:    Katie Clemens, 320 S. Lipan St., Denver, CO. 80223
        (Name and complete mailing address)

        (303) 454-8811 http://gowestpac.com
        (Telephone number and e-mail address if known)

Defendant 4:        Jeremy Salazar, 320 S. Lipan St., Denver, CO. 80223
                    (Name and complete mailing address)

                    (303) 454-8811 http://gowestpac.com
                    (Telephone number and e-mail address if known)

Defendant 5:

                    (Name and complete mailing address)

                    (Telephone number and e-mail address if known)

Defendant 6:

                    (Name and complete mailing address)

                    (Telephone number and e-mail address if known)

Defendant 7:

                    (Name and complete mailing address)

                    (Telephone number and e-mail address if known)

Defendant 8:

                    (Name and complete mailing address)

                    (Telephone number and e-mail address if known)

## C.        JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

  X    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et. seq.
(employment discrimination on the basis of race, color, religion, sex, or national origin)

_____    Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et. seq. (employment
discrimination on the basis of a disability).

_____    Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et. seq.
(employment discrimination on the basis of age)

3·

__X_ Other *(please specify):*  42 U.S.C. § 1981, Colorado Anti-Discrimination Act C.R.S. §§ 24-34-301 to 804.

### D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

**CLAIM ONE: RACE-BASED DISCRIMINATION (Disparate Impact & Treatment) in VIOLATION of TITLE VII of the CIVIL RIGHTS ACT of 1964, as amended, 42 U.S.C. § 2000e-2(a) & 42 U.S.C. § 2000e-2(m)**

**Supporting facts:**

1. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

2. Defendants were acting under Western Pacific Building Materials (herein "Western Pacific") policies and procedures at all relevant times to this action.

3. This Claim One is being leveled against Defendant Western Pacific and Defendants' Greg Kilcollins, Katie Clemens, and Jeremy Salazar (herein "Defendant Kilcollins", "Defendant Clemens", "Defendant Salazar", or collectively "Defendants"), for intentionally firing Dwayne Wilson (herein "Plaintiff") based on its hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

**A. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4. On January 18, 2022, Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") with allegations of race, age, and retaliation.

4

(See Attachments).

5. On January 30, 2024, the EEOC issued Plaintiff a Notice of Right to Sue Letter. (See Attachments).

6. Plaintiff timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## B. FACTUAL ALLEGATIONS

7. Plaintiff is a 52 year old African-American male, which makes him a member of a protected class.

8. On November 2, 2020, Plaintiff was hired by Western Pacific to be a truck driver and deliver building materials.

9. Plaintiff was employed by Western Pacific for approximately 20 months prior to the July 6, 2022 termination.

10. During the 20 months of Plaintiff's employment he worked as a truck driver delivering building materials, was always on time to work, and maintained a good work performance.

11. During the time of Plaintiff's employment at Western Pacific between November 2, 2020 to July 6, 2022, Defendants' Kilcollins and Salazar were Plaintiff's direct supervisors'.

12. Defendant Kilcollins is the dispatch manager and Defendant Salazar is the operations manager at Western Pacific.

13. On December 3, 2020, Plaintiff was riding with another black employee who had a doctor's appointment on that day.

14. The black employee informed Defendants' and made them aware of his doctor's appointment.

15. Defendants' forgot about the employee's appointment and threatened Plaintiff with a write-up although the error was Defendants' fault.

16. On January 13, 2021, a White male helper got into a company truck while Plaintiff was in the office doing paperwork.

17. The White employee ended up crashing the company truck.

18. The impact of the crash caused the door to be ripped off the company vehicle.

19. Upon information and belief, the aforementioned White employee was a driver's helper and

5

not authorized to operate company vehicles.

20. Upon information and belief, the White employee was not insured under Western Pacific's vehicle insurance, related to having a bad motor vehicle record and/or no valid driver's license.

21. Defendant Kilcollins created a no-win or dead-end situation for Plaintiff by ordering him to say that he caused the crash and damage to the company vehicle.

22. Defendant Kilcollins made this unethical decision to assure that the insurance company pays for the damages and in order to spare the White employee from getting fired.

23. Several weeks after the crash incident and Defendant Kilcollins unethical conduct, Plaintiff confronted him about it and asked him not to ever put him in that situation again.

24. Not long after the confrontation related to the crash, Plaintiff began noticing that Defendant Kilcollins was treating him differently than his White and Mexican counterparts.

25. Defendant Kilcollins began placing Plaintiff on assignments without a helper and forcing him to take heavier loads and shipments that his White and Mexican counterparts refused to take.

26. Upon information and belief, whenever White and Mexican drivers complained about their assigned shipments, Defendant Kilcollins would reassign the shipments to Plaintiff to accommodate the White and Mexican drivers.

27. Plaintiff was being forced by Defendant Kilcollins to take shipments that his White and Mexican counterparts refused to take and load and unload the shipments of building materials by himself.

28. Plaintiff injured his back several times related to Defendant Kilcollins forcing him to load and unload heavy shipments without a helper.

29. Defendant Kilcollins made sure that the White and Mexican drivers had driver helpers.

30. These shipments are heavy and consist of exterior doors, interior doors, locks, millwork, and windows.

31. Defendant Kilcollins made it a point to make sure that Plaintiff worked more days and with heavier shipments in comparison to his counterparts.

32. Plaintiff began complaining to Defendants' and other employees about Defendant Kilcollins discriminative, disrespectful, and unprofessional behavior and treatment.

33. On May 2, 2021, Plaintiff began his campaign of complaining to Defendant Salazar about Defendant Kilcollins discriminative, disrespectful, and unprofessional behavior and treatment.

34. Between May 2021-September 2021, Plaintiff made several complaints to Defendant Salazar

regarding Defendant Kilcollins forcing him to load and unload heavy shipments by himself and his discriminatory, disrespectful, and unprofessional behavior and treatment.

35. Each time that Plaintiff made these complaints, Defendant Salazar would blow it off or fail to address the issues.

36. On May 3, 2021, Defendant Salazar falsely accused Plaintiff of delivering a shipment with damaged equipment.

37. Plaintiff did not deliver the aforementioned shipment and said as much to Defendant Salazar.

38. Plaintiff protested the false shipment delivery accusation and received a write-up for the protest and for allegedly delivering the damaged equipment.

39. Management investigated the incident and determined that another employee actually delivered the damaged equipment.

40. Defendant Salazar leveled the false incident report against Plaintiff in retaliation for leveling complaints against his friend and colleague, Defendant Kilcollins.

41. When Defendant Salazar and management discovered who actually delivered the shipment, they failed to penalize him because he was Mexican.

42. On September 8, 2021, Plaintiff again complained to Defendant Salazar about Defendant Kilcollins discriminative, disrespectful, and unprofessional behavior and treatment.

43. Defendants' Clemens and Salazar conducted a hearing related to the complaints about Defendant Kilcollins discriminatory, disrespectful, and unprofessional behavior and treatment.

44. Upon information and belief, Defendants' Clemens and Salazar lied and refused to consider information they obtained from a black employee witness that provided information to support Plaintiff's claims.

45. Upon information and belief, Defendants' Clemens and Salazar refused to call another black employee witness to the hearing who knew pertinent information related to Defendant Kilcollins misconduct.

46. After Plaintiff made the September 8, 2021 complaint against Defendant Kilcollins, his discriminatory, disrespectful, and unprofessional behavior and treatment of Plaintiff worsened.

47. On November 8th & 9th, 2021, Plaintiff missed 2 days of work related to a back injury.

48. On November 9, 2021, Defendant Kilcollins contacted Plaintiff to inform him when he returned to work on November 10, 2021, he needed to provide a doctor's.

49. Plaintiff immediately leveled a complaint against Defendant Kilcollins related to him

demanding Plaintiff to provide a doctor's note.

50. Western Pacific's policy provides that a doctor's note is only required on the third day of absence.

51. Defendant Kilcollins had previously requested Plaintiff to provide doctor's notes for absences in violation of company policy.

52. Defendant Kilcollins is aware of the company's policy regarding absences but used Plaintiff's absences as an opportunity to harass him.

53. Defendant Clemens responded to the complaint and allegedly corrected Defendant Kilcollins on the policy for requesting doctor's notes.

54. On November 10, 2021, upon Plaintiff returning to work, he provided a doctor's note anyway.

55. The doctor's note informed Defendants' that Plaintiff has a back injury that was being treated with back injections and pain medication.

56. Although Defendant Kilcollins was aware of Plaintiff's back injury, he forced him to deliver a full shipment of building supplies.

57. This misconduct subjected Plaintiff to further injury, in retaliation for submitting the doctor's note request complaint.

58. On December 10, 2021, Defendant Kilcollins demanded Plaintiff to take a shipment that a White driver refused to take, and load and unload the shipment of building materials by himself.

59. Plaintiff confronted Defendant Kilcollins, informing him that it was unfair for him to continue changing his deliveries in order to appease the White and Mexican drivers and making Plaintiff's work harder.

60. Defendant Kilcollins got upset and began following Plaintiff around the warehouse and antagonizing him for complaining.

61. Defendant Kilcollins began making derogatory statements and bragging about past fights he had to the Plaintiff in an intimidating manner.

62. Defendant Kilcollins was calling Plaintiff an old man, calling him a cry baby, and told Plaintiff to take his old a_ _ elsewhere and find a new job.

63. Defendants' wrote Plaintiff up and sent him home for the day without pay, although he was not the aggressor.

64. Plaintiff did not receive an opportunity to explain what happened or present evidence to

8

support that he did nothing wrong.

65. Although Defendant Kilcollins was the aggressor and conducted himself in an unprofessional manner, he did not receive any kind of discipline for his actions and conduct.

66. On January 18, 2022, Plaintiff filed a complaint with the EEOC against Defendants' alleging claims for retaliation, and race and age discrimination, based on what appeared to be discriminatory, disrespectful, and unprofessional behavior and treatment.

67. After Plaintiff filed his complaint with the EEOC against the Defendants the harassment intensified and got worse.

68. On February 17, 2022, Plaintiff called Shane Kuk (herein "Mr. Kuk") to complain about Defendant Kilcollins switching his assigned loads to accommodate White and Mexican drivers.

69. Mr. Kuk is the general manager at Western Pacific.

70. Mr. Kuk ignored Plaintiff's complaint and concerns and the harassment continued unchecked.

71. On March 2, 2022, Defendant Kilcollins reassigned Plaintiff a heavy load that a White driver complained about and refused to take.

72. Upon information and belief, unbeknownst to Plaintiff because Defendant Kilcollins did not mention it, there was damaged equipment on the load.

73. Defendant Kilcollins assigned a helper who is an Black employee to help Plaintiff with the damaged load.

74. The Black employee ended up being injured by the damaged equipment on the load and had to get stitches.

75. When the injured employee, who's black, complained to management about Defendant Kilcollins switching the damaged load from the White employee and forcing Plaintiff to take the load, he was terminated.

76. On June 23, 2022, Defendant Kilcollins reassigned Plaintiff a heavy load that a Mexican driver complained about and refused to take.

77. Defendant Kilcollins refused to give Plaintiff a helper to manage the heavy load.

78. Plaintiff ended up injuring his back and neck from the heavy load that Defendant Kilcollins forced him to take by himself.

79. Plaintiff complained to Defendant Salazar about Defendant Kilcollins forcing him to take the heavy load that the Mexican driver refused to take.

80. Defendant Salazar was aware that Defendant Kilcollins was forcing Plaintiff to take loads

9

that White and Mexican drivers refused to take.

81. Plaintiff also informed Defendant Salazar of the injuries he sustained from working the heavy load by himself.

82. Although Plaintiff complained about Defendant Kilcollins forcing him to take loads that White and Mexican drivers refused to take, his refusal to give Plaintiff help, and the injuries to his back, Defendant Salazar blew it off and allowed the misconduct to continue.

83. Defendant Salazar also refused to send Plaintiff to the doctor related to the injuries to his back that he sustained from the heavy load.

84. Plaintiff continues to have pain and issues with his back related to Defendants' negligent misconduct.

85. On June 30, 2022, Plaintiff showed up to work and learned that Defendant Kilcollins assigned him a helper named Angelo Garcia to help with deliveries that day.

86. Plaintiff was uncomfortable about the assignment because Defendant Kilcollins refused to give Plaintiff helpers

87. Defendant Kilcollins did not brief Plaintiff on if Mr. Garcia was licensed and authorized to drive company vehicles which is normal practice.

88. Plaintiff had seen Mr. Garcia drive company vehicles in the past and assumed he had a license and authorized to drive company vehicles.

89. At some point while delivering the aforementioned shipment, Mr. Garcia got in the company truck and parked it in an appropriate spot.

90. As soon as Mr. Garcia moved the company truck to park it, Defendant Kilcollins called Plaintiff to inform him that he was in trouble for letting Mr. Garcia drive.

91. Upon information and belief, Defendant Kilcollins followed Plaintiff to his delivery destination and was spying on him.

92. Upon information and belief, Mr. Garcia actually had a license but Defendant Kilcollins used the opportunity to get Plaintiff fired in accordance with management's plan.

93. Defendant Kilcollins wrote Plaintiff up for allowing an unauthorized employee to operate a company vehicle.

94. When Plaintiff returned to the warehouse Defendants' conducted a hearing on the write up.

95. Although Defendant Kilcollins admitted during the hearing that he allows helpers to park vehicles, Plaintiff was suspended indefinitely.

10

96. On July 6, 2022, Defendants terminated Plaintiff's employment related to Mr. Garcia parking the company truck.

97. Plaintiff was fired in retaliation filing informal grievances and complaints, and for filing the employment discrimination complaint with the EEOC.

98. Upon information and belief, Mr. Garcia was licensed at the time of the incident and/or Plaintiff believed he was licensed.

99. Upon information and belief, Defendant Kilcollins allows helpers to park company vehicles when needed.

100. Finally, as mentioned above in paragraphs 16-23, Defendant Kilcollins ordered Plaintiff to say that he caused the crash and damage to a company vehicle that a White employee did, so that the insurance would cover the damages.

101. The White employee was a helper and was parking the vehicle when the accident happened.

102. All the above mentioned facts demonstrate that Plaintiff was being harassed and discriminated against throughout his employment at Western Pacific and fired for engaging in constitutionally protected activities.

103. In summary, Plaintiff was unlawfully discriminated against based on his race and age, and unlawfully terminated in retaliation for engaging in protected activity, in violation of Title VII and CADA:

a) Plaintiff began employment with the Defendant on or about November 2, 2020, and performed his job duties satisfactorily at all times, and his most recent job title was truck driver;

b) On or about December 3, 2020, until July 6, 2022, Plaintiff was discriminated against and harassed by management based on his race and age;

c) On or about December 3, 2020, until July 6, 2022, Plaintiff was discriminated against and harassed by management based on his race and age and discharged based on his protected class and terminated in retaliation for engaging in protected activity;

d) Plaintiff promptly engaged in protected activity by objecting to management's discriminatory mistreatment and reported such to the Defendant's Human Resources Department;

e) On July 6, 2022, Plaintiff was unlawfully discharged for engaging in protected activities;

f) Plaintiff believes that he was discriminated against based on his protected class and unlawfully terminated in retaliation for engaging in protected activity.

104. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race and age.

105. Defendants' practice of harassing and subjecting Plaintiff to an unlawful termination, had an adverse impact on him and subjected him to disproportionate treatment because of his race and age.

106. Defendants' practice of harassing and subjecting Plaintiff to an unlawful termination, was neither manifestly job-related nor consistent with business necessity.

107. Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

108. Upon information and belief, Plaintiff was unlawfully terminated from Western Pacific based on race, age, and in retaliation for Plaintiff engaging in constitutionally protected activities, in violation of Title VII and CADA.

109. For the reasons outlined in the aforementioned paragraphs, Plaintiff suffered an adverse employment action, an action that would not have occurred "but-for" Plaintiff's race and age, and for engaging in constitutionally protected activity.

110. The facts outlined in this complaint show that the adverse action occurred under circumstances giving rise to an inference of discrimination and retaliation.

111. Western Pacific's practice and policies of mistreating black men, in comparison to other races of people, and firing Plaintiff for complaining about said misconduct subjected Plaintiff to "disparate treatment."

112. As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

113. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination and retaliation.

114. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully

and wantonly, caused Plaintiff's injuries.

**CLAIM TWO : <u>RACE-BASED DISCRIMINATION (Hostile Work Environment) in VIOLATION of TITLE VII of the CIVIL RIGHTS ACT of 1964, as amended, 42 U.S.C. § 2000e-2(a)</u>**

**Supporting Facts:**

115. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

116. This Claim Two is being leveled against Defendant Western Pacific, for the intentional firing of Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

117. Plaintiff was subjected to harassment by Defendants, because of his race.

118. Plaintiff was subjected to being harassed because of his race and age, and then, unlawfully terminated in retaliation for engaging in protected activities.

119. Defendants' conduct was not welcomed by Plaintiff.

120. Defendants' conduct was undertaken because of Plaintiff's race.

121. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

122. Plaintiff believed the work environment to be hostile or abusive as a result of Defendants conduct.

123. Management level employees knew, or should have known, of the abusive conduct.

124. Plaintiff provided management level personnel with information sufficient to raise a probability of race harassment in the mind of a reasonable employer.

125. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it.

126. Indeed, the management level employees were themselves complicit in the abusive conduct.

127. Defendants did not exercise reasonable care to prevent harassment in the workplace on the basis of race, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

128. As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will

continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

129. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

130. The Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

## CLAIM THREE: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. 42 U.S.C. § 2000e-3(a)

**Supporting Facts:**

131. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

132. This Claim Three is being leveled against Defendant Western Pacific, for intentionally firing Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

133. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [he] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

134. Plaintiff made informal complaints to Defendants' for the unlawful and discriminatory employment practices based on race.

135. As a result of Plaintiffs' Informal complaints, Defendants' agents took materially adverse actions against Plaintiff, including, but not limited to, terminating his employment for engaging in protected activities.

136. Defendants' adverse actions constituted retaliatory workplace harassment.

137. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activities under Title VII.

138. As a direct, legal and proximate result of Defendants' retaliation, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

14

**CLAIM FOUR: <u>AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621, et seq.</u>**

**Supporting Facts:**

139. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

140. This Claim Four is being leveled against Defendant Western Pacific, for intentionally firing Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

141. Western Pacific has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by: (a) knowingly and intentionally, in the company's hiring and employment practices, treating adversely individuals who are age 40 and older, and treating preferentially individuals who are under 40 years old, and (b) filling a disproportionately large percentage of its workforce with individuals under 40 years old (such that the median workforce age is 29 years old) even when there are many individuals aged 40 or older who are available and well-qualified for the positions at issue.

142. As a direct and proximate result of Western Pacific's intentional discrimination, Plaintiff has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Defendants.

143. Western Pacific has used policies and practices related to hiring and employment described herein, that have had a disparate impact on the basis of age (discriminating against workers who are age 40 and older) that are not job-related for the positions at issue, not consistent with business necessity and are not necessitated by any reasonable factor other than age.

144. Western Pacific's actions constitute unlawful discrimination in violation of the ADEA.

## CLAIM FIVE: RETALIATION in VIOLATION of SECTION 1981 of the CIVIL RIGHTS ACT of 1866

**Supporting Facts:**

145. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

146. This Claim Five is being leveled against Defendants Western, for intentionally firing Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

147. Defendants have violated Section 1981 by subjecting Plaintiff to retaliation for his protected complaints and opposition to Defendants Kilcollins, Clemens, and Salazar's, discriminatory conduct on the basis of race and age, by, *inter alia,* terminating Plaintiff's employment with the company for engaging in constitutionally protected activities.

148. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

149. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

150. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of Punitive Damages.

## CLAIM SIX: <u>DISCRIMINATORY TREATMENT BECAUSE OF RACE in VIOLATION of SECTION 1981 of the CIVIL RIGHTS ACT of 1866</u>

**Supporting Facts:**

151. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

152. This Claim Six is being leveled against Defendants Western Pacific, Kilcollins, Clemens, and Salazar, for intentionally firing Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks, which ultimately subjected Plaintiff to "disparate treatment."

153. During Plaintiff's employment at Western Pacific, the Defendants engaged in unlawful discriminatory employment practices by discriminating against him with respect to the terms and conditions thereof.

154. The unlawful employment practices include, without limitation, disparate treatment, harassment, and termination all because of Plaintiff's race.

155. The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status because of his race.

156. These unlawful employment practices were intentional.

157. The unlawful employment practices were done with malice or with reckless indifference to Plaintiff's federally protected rights.

## CLAIM SEVEN: <u>FAILURE TO TRAIN OR SUPERVISE in VIOLATION of SECTION 1981 of the CIVIL RIGHTS ACT of 1866</u>

**Supporting Facts:**

158. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

159. Defendant Western Pacific, developed and maintained employment related policies, procedures, customs, and/or practices exhibiting or resulting in deliberate indifference to the

protected Federal rights of Black and African-American employees of Western Pacific, which caused the violation of Plaintiff's Federal rights.

160. Defendant Western Pacific maintain employment related policies, procedures, customs, and/or practices that tacitly or explicitly authorize discrimination and retaliation against the protected class of Black and African-American employees by supervisors of Western Pacific, including, but not limited to, the failure to properly train on at least the following: proper supervision, internal investigations, grievances, discipline, and Title VII issues and the rights of employees with respect to the same.

161. In light of being a corporate employer, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of Federal rights such as those described herein.

162. Defendant Western Pacific is liable for their failure to train and appropriately supervise the employees of Western Pacific.

163. The inadequate training and supervision provided by Western Pacific resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Western Pacific.

164. If any training was given Defendants Kilcollins, Clemens, and Salazar, concerning supervision, internal investigations, grievances, discipline, and Title VII issues and the rights of employees, Defendants Western Pacific knew or should have known that such training was reckless or grossly negligent and that misconduct in that area was almost inevitable.

165. Defendant Western Pacific had a duty to protect the Federal rights of the employees of Western Pacific.

166. As a direct and proximate cause and consequence of Defendant Western Pacific's failure to train and supervise, Plaintiff suffered injuries, damages, and losses as set forth above.

## CLAIM EIGHT: DISCRIMINATORY TREATMENT BECAUSE OF RACE And AGE in VIOLATION of the COLORADO ANTI-DISCRIMINATION ACT

**Supporting Facts:**

167. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth

herein.

168. This Claim Eight is being leveled against Defendants Western Pacific, Kilcollins, Clemens, and Salazar, for intentionally firing Plaintiff based on their hiring practices and policies, that has a "disparate impact" on blacks and blacks over 40, which ultimately subjected Plaintiff to "disparate treatment."

169. Plaintiff began employment with the Defendant on or about November 2, 2020, and performed his job duties satisfactorily at all times, and his most recent job title was truck driver.

170. On or about December 3, 2020, until July 6, 2022, Plaintiff was discriminated against and harassed by management based on his race (African-American) and age (black men over 40).

171. On or about December 3, 2020, until July 6, 2022, Plaintiff was continuously harassed and discharged based on his protected class and terminated in retaliation for engaging in protected activity.

172. Plaintiff promptly engaged in protected activity by objecting to management's discriminatory mistreatment and reported such to Western Pacific's Human Resources Department.

173. On July 6, 2022, Plaintiff was unlawfully discharged for engaging in protected activities.

174. Plaintiff believes that he was discriminated against based on his protected class and unlawfully terminated in retaliation for engaging in protected activity, in violation of the Colorado Anti-Discrimination Act (CADA). See C.R.S. § 24-34-401.

175. As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic damages to be proven at trial.

176. As a result of Defendants' actions, Plaintiff suffered emotional distress, resulting in damages in an amount to be proven at trial.

## CLAIM NINE: <u>COMMON LAW TORT-NEGLIGENCE AND NEGLIGENCE PER SE</u>

**Supporting Facts:**

177. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

178. Defendants Western Pacific, Kilcollins, Clemens, and Salazar, unlawfully terminated Plaintiff's employment in retaliation for Plaintiff engaging in protected activities, in violation of the Colorado Anti-Discrimination Act.

179. Defendants' Kilcollins, Clemens, and Salazar were negligent in subjecting Plaintiff to an unlawful termination of his employment.

180. Defendants' Kilcollins, Clemens, and Salazar, had a duty to comply with all statutory and regulatory provisions that pertained or applied to Employment Practices in Colorado under the Colorado Anti-Discrimination Act and the Colorado Employment Security Act.

181. As a result of Defendants Kilcollins, Clemens, and Salazar's negligence, Plaintiff suffered emotional distress and mental anguish, as well as economic loss.

182. As a result of Defendants Kilcollins, Clemens, and Salazar's violation of statutory and regulatory provisions designed to protect Plaintiff from discriminatory Employment Practices they are liable to Plaintiff for the resulting injuries.

183. As a direct and proximate result of Defendants' Kilcollins, Clemens, and Salazar's unlawful termination of Plaintiff's employment, he has suffered emotional distress and mental anguish, humiliation, embarrassment, physical and emotional upset, loss of sleep and appetite, and general damages.

184. Defendants', as detailed above, were acting recklessly, knowingly, intentionally, willfully and wantonly caused Plaintiff's injuries.

## CLAIM TEN: COMMON LAW TORT-NEGLIGENCE IN SUPERVISING AND TRAINING

**Supporting facts:**

185. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

186. At all times relevant to this case, Defendant Western Pacific's employees acted within the scope of their duties as employees of Western Pacific.

187. Western Pacific had a duty to properly train, supervise, and discipline, and where necessary, terminate its personnel in order to protect its employees from dangers reasonably likely to result from the absence of proper training, supervision, discipline, and firing.

188. Upon information and belief, Defendants' Kilcollins, Clemens, and Salazar, were employed by Western Pacific during the time they subjected Plaintiff to discrimination, harassment, and unlawful termination.

189. Defendant Western Pacific had a duty to properly manage and supervise Defendants' Kilcollins, Clemens, and Salazar, in accordance with Western Pacific policies and procedures on all statutory and regulatory provisions that pertained or applied to Employment Practices in Colorado, to protect its employees from dangers reasonably likely to result from the absence of proper management and supervision.

190. Defendants Western Pacific, and other Western Pacific employees, knew or should have known of prior instances of dangerous or incompetent behavior by Defendants Kilcollins, Clemens, and Salazar, and should have trained and retrained Defendants Kilcollins, Clemens,

20

and Salazar, on all statutory and regulatory provisions that pertained or applied to Employment Practices in Colorado before the Plaintiff was subjected to race and age discrimination, and retaliation, but instead allowed Defendants Kilcollins, Clemens, and Salazar, to continue subjecting its employees to unlawful employment practices.

191. Defendant Western Pacific, and other Western Pacific employees, armed with the above information, breached their duties to its employees, including Plaintiff, by failing to adequately train, supervise, discipline, or terminate Defendants' and other Western Pacific employees, although their failure to manage and supervise Western Pacific employees on all statutory and regulatory provisions that pertained or applied to Employment Practices in Colorado resulted in discrimination, harassment, retaliation, and unlawful terminations of Western Pacific WS employees.

192. For years, Defendant Western Pacific have failed to discipline, manage, supervise, terminate, and train Western Pacific employees regarding all statutory and regulatory provisions that pertained or applied to Employment Practices in Colorado, or for violations thereof.

193. Defendants' breach of these duties directly and approximately caused Plaintiff's injuries.

## CLAIM ELEVEN: COMMON LAW TORT-RESPONDEAT SUPERIOR/ VICARIOUS LIABILITY

**Supporting facts:**

194. Plaintiffs hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

195. At all relevant times during the incident described and alleged herein, Defendants Kilcollins, Clemens, and Salazar, and other Western Pacific employees were acting in the scope and course of their employment, and at the direction of Western Pacific.

196. Under the doctrine of vicarious liability/respondeat superior, principal agency and/or agency by estoppel, Defendant Western Pacific is liable for the negligent acts or failure to act of its agents and employees, including but not limited to the negligent actions and failed actions of Defendants Kilcollins, Clemens, and Salazar, and other Western Pacific employees.

197. Defendants, as detailed above, were acting recklessly, knowingly, intentionally, willfully and wantonly caused Plaintiffs injuries.

## CLAIM TWELVE: COMMON LAW TORT-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Supporting Facts:**

198. Plaintiffs hereby incorporate by reference all paragraphs of this complaint as if fully set forth herein.

199. Defendants Kilcollins, Clemens, and Salazar's unlawful actions as previously described in this complaint, was intentional or reckless, and was known to Defendants Kilcollins, Clemens, and Salazar, to likely produce severe emotional distress in the Plaintiff, and it did in fact produce severe emotional distress in the Plaintiff.

200. Defendants Kilcollins, Clemens, and Salazar's conduct, as previously described, was extreme and outrageous, wholly without legal or factual justification, was malicious and wanton, and thus entitles Plaintiff to recover actual and punitive damages as previously described.

201. As a direct and proximate result of Defendants Kilcollins, Clemens, and Salazar's, Plaintiff has suffered past and future loss, to include but not limited to, emotional and mental distress, humiliation, embarrassment, physical and emotional upset, loss of sleep and appetite, and general damages.

202. Defendants Kilcollins Clemens and Salazar's conduct of intentionally and unlawfully subjecting Plaintiff to discrimination, harassment, retaliation, and unlawful termination of employment, was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and should be regarded as atrocious, and utterly intolerable in a civilized community.

203. Defendants', as detailed above, were acting recklessly, knowingly, intentionally, willfully and wantonly caused Plaintiff's injuries.

## E. ADMINISTRATIVE PROCEDURES

Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or any other Federal or state agency? *(check one)*

        X   Yes *(You must attach a copy of the administrative charge to this complaint).*

        _____  No

## F.    REQUEST FOR RELIEF
*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

WHEREFORE, Plaintiff, Dwayne K. Wilson respectfully requests that the Court enter judgment in his favor and against the Defendants, and award the following relief, to the fullest extent allowed by law:

a. Back pay and related compensation, and front pay, in amounts to be determined at trial;

b. Compensatory and consequential damages, as allowed;

c. Emotional distress damages, as allowed;

d. Punitive damages, as allowed;

e. Injunctive and/or declaratory relief;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

h. Any such further relief as justice allows.

## G.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

4|3|24
_____
(Date)

(Form Revised December 2017)

23